UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | 1:19-cr-00134-LEW-7 |
| ANGELA DOODY, | ) | |
| | ) | |
| Defendant | ) | |

## DECISION AND ORDER ON MOTION TO SUPPRESS

Defendant Angela Doody is indicted for one count of Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), 846, and one count of Unlawful Use of a Communication Facility in violation of 21 U.S.C. § 843(b). Indictment (ECF No. 62). Ms. Doody moves to suppress post-*Miranda* incriminating statements she made to law enforcement during two separate custodial interviews on the date of her arrest, July 25, 2019. Mot. to Suppress (ECF No. 264). A hearing on the Motion was held on March 11, 2020. After careful consideration of the evidence and the arguments of counsel, Defendant's Motion to Suppress is DENIED.

## BACKGROUND

On July 25, 2019, DEA Agent Bryan Klutzaritz and Maine DEA Agent Forrest Dudley brought the Defendant into an interview room at the Presque Isle Police Department for questioning following her arrest. Though Ms. Doody was initially handcuffed, the agents removed the restraints once the Defendant was in the interview room. Agent Klutzaritz gave the Defendant a copy of the arrest warrant and told her what she was being charged with. He also explained that she would be arraigned in federal court

later that day. He read Ms. Doody her *Miranda* rights, and she responded that she understood them and was willing to answer questions. During this first eighteen-minute interview, the agents mined Ms. Doody for information about her co-conspirators, and encouraged her to cooperate as fully as possible.

In the first interview, Ms. Doody alluded to a backpack containing incriminating evidence relevant to the charged conspiracy. To assist the agents in obtaining the backpack, the first interview ended so that Ms. Doody could call someone at the home to surrender the backpack. She did so, and returned for a second interview at 8:35 a.m. During this second interview, which lasted eleven minutes, she gave further incriminating statements about the conspiracy. At no point did Agent Klutzaritz or Agent Dudley make any promises, threats, or coercive statements to induce the defendant to make incriminating admissions.

## DISCUSSION

The Defendant believes any incriminating statements she made during the two July 25, 2019 interviews should be suppressed because they were "involuntary," arguing the Agents used tactics so coercive as to make her confessions of criminal wrongdoing no longer "free and voluntary." *United States v. Dickerson*, 530 U.S. 433, 434 (2000). A statement is only "involuntary"—and subject to suppression—if a defendant's will was overborne, considering the totality of the circumstances surrounding the confession. *Id.* The voluntary nature of statements is determined by looking at "both the nature of the police activity and the defendant's situation." *United States v. Hughes*, 640 F.3d 428, 438 (1st Cir. 2011). Relevant considerations include the length and nature of the questioning,

promises or threats made by investigators, any deprivation of the suspect's essential needs, and the defendant's personal circumstances—*i.e.* age, education, intelligence, mental condition, and prior experience with the criminal justice system. *United States v. Jacques*, 744 F.3d 804, 809 (1st Cir. 2014). In light of this case law, Ms. Doody moves to suppress "any statements made during the two interrogations from evidence at trial." Mot. to Suppress at *8.[1] Considering the above factors, I find that Ms. Doody's post-*Miranda* statements during these interviews were voluntary, and I will deny the Motion to Suppress.

Ms. Doody argues her confessions were "involuntary" primarily because the Agents told her that cooperation would be the way to "help herself," and that they would "tell the U.S. Attorney's office that you're cooperative." Despite this gentle coaxing, however, the Agents consistently told Ms. Doody they could not, and would not, guarantee her any particular sentence in exchange for cooperation.[2] And, "[i]t is well settled in the First Circuit that an officer does not impermissibly overbear a defendant's will by promising to bring the defendant's cooperation to the prosecutor's attention or by suggesting that cooperation may lead to more favorable treatment." *Jacques*, 744 F.3d at 809–10. As a matter of law, in the First Circuit these tried-and-true police interrogation techniques did not "overbear" Ms. Doody's will such that her responses were "involuntary." I, therefore,

---

[1] Ms. Doody does not move to suppress any statements made during the phone call that occurred in between the two interviews.

[2] Ms. Doody also argues that because the Agents incorrectly suggested she faced a 5-year mandatory minimum sentence her subsequent incriminating statements are involuntary. Though incorrect, the Agents' mistake did nothing to contribute to the allegedly coercive atmosphere of the interrogation. If anything, this misstatement cuts against the Defendant's suppression arguments; if there were a mandatory minimum, the alleged suggestions of leniency-for-cooperation would bear much less weight.

3

find the Agents did not undermine the voluntariness of Ms. Doody's statements by suggesting she help herself, or that they would alert the U.S. Attorney to her cooperation.

Ms. Doody also argues that the duration of her interviews contributed to the involuntariness of her statements. But the two interviews were relatively short—eighteen and eleven minutes. Indeed, that the interrogation sessions were so short further supports a finding that Ms. Doody's statements were voluntary, rather than coerced. *See United States v. LeBrun*, 363 F.3d 715, 726 (2004) (placing "substantial weight on the fact that [the defendant] confessed after a mere thirty-three minutes" in finding the defendant's statements were "voluntary"). Following the Supreme Court's lead in *Lebrun,* I find the duration of Ms. Doody's interviews, if anything, proves that she made her incriminating statements voluntarily.

Finally, with respect to Ms. Doody's age, intelligence, and mental condition: she was forty-four years old at the time of the interviews, appeared coherent throughout, and had prior contacts with the criminal justice system, all indicia of a "voluntary" confession. These remaining factors the First Circuit identified in *Jacques* likewise indicate Ms. Doody's confessions were not "involuntary." They suggest the opposite—that she had all her faculties during the July 25, 2019 interviews and made her statements to law enforcement of her own accord.

Because none of the factors Ms. Doody identifies in her Motion to Suppress suggests her will was overborne during her two interviews, or that she was coerced into making incriminating statements, I find that her statements were voluntary, and deny the Motion.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress (ECF No. 264) is DENIED.

**SO ORDERED.**

Dated this 26th day of March, 2020.

                                                   /s/ Lance E. Walker
                                                   **LANCE E. WALKER**
                                                   **UNITED STATES DISTRICT JUDGE**